United States Courts
Southern District of Texas
F I L E D

SEP 16 2019

David J. Bradley, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT GANDY, | § § § | |
| *Plaintiff* | § § | |
| VS. | § § § | CIVIL ACTION NO. _____ |
| HARRIS COUNTY, TEXAS; STEVEN BALDASSONO; AND KIM OGG. | § § § § § | Jury Demand |
| *Defendants* | § § § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, ROBERT GANDY, files this Complaint against Defendants, Harris County, Kim Ogg, and Steven Baldassono (collectively, "Defendants"), and states as follows:

### INTRODUCTION

1. Robert Gandy is a victim of an egregious miscarriage of justice that resulted in his imprisonment in violation of his Fourteenth Amendment rights afforded under the United States Constitution. An unfortunate and unconstitutional theme of winning at all costs permeated Mr. Gandy's conviction, through the State's prosecutor knowing, willing, negligent and or deliberate use of false, misleading and or perjured testimony and or junk science to obtain his conviction. The Defendants caused Mr. Gandy to be deprived of his constitutional rights to a fair trial and took precious 15-years of his life from him through imprisonment and 15-years of his liberty on parole.

### JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §1331, 42 U.S.C. §§1983 and 1988, and supplemental jurisdiction under 28 U.S.C. §1367(a), to hear Plaintiff's state law claims, if any.

3. Venue is proper in the Southern District of Texas under 28 U.S.C. §1391(b) because that is the judicial district in which the claims arose and in which defendants resided or conducted business during the relevant period herein.

### PARTIES

4. Plaintiff, ROBERT GANDY, is an individual residing in Fort Bend County, Texas.

5. Defendant Harris County is a governmental organization organized under the laws of the State of Texas. Harris County is sued for the constitutional harm suffered by Mr. Gandy as a result of the County's official and unofficial policies and customs, including but not limited to: failing to adequately train and supervise District Attorneys with respect to their constitutional obligations to disclose exculpatory material and impeachment evidence; pushing prosecutors to convict criminal defendants regardless of the weight of the evidence against them; fostering widespread disregard for the constitutional rights of the accused; permitting District Attorneys to employ unlawful tactics, such as false testimony, to secure favorable witness testimony; and general inadequate management and administration of the District Attorney's Office. Defendant Harris County may be served with process by delivering a copy of the summons and of the complaint to the Harris County Judge, Honorable Lina Hildago, at 1001 Preston, Suite 911, Houston, TX 77002, as authorized by Texas state law.

6. Defendant Steven Baldassano was employed by Harris County as an Assistant District Attorney. He was employed by the County at the time of the prosecution of Mr. Gandy. Upon information and belief, he is a Texas resident. Defendant Baldassano is sued in his individual and official capacities. Defendant Steven Baldassano may be served with process at Harris County District Attorney's Office, 1201 Franklin St., Suite 600, Houston, TX 77002-1923.

7. Defendant Kim Ogg is currently District Attorney for Harris County and is sued in her official capacity as the successor-in-office and successor-in-liability to former District Attorney John B. Holmes Jr., the District Attorney at the time Mr. Gandy was convicted. Defendant Ogg may be served with process at her usual place of business by delivering a copy of the summons and of the complaint to the Harris County District Attorney's Office, 1201 Franklin St., Suite 600, Houston, TX 77002-1923.

## **PROCEDURAL HISTORY**

8. Mr. Gandy was convicted of Aggravated Robbery on September, 1990 in the 351st District Court of Harris County, Texas, and was sentenced to Life in prison.

9. On August 02, 2018, the Honorable George Powell, Presiding Judge, 351st District Court, signed an "Agreed Proposed Findings of Fact and Conclusions of Law and Order" ("Findings of Fact"). In that document, the Court held that the State use of false, misleading and or perjured testimony violated Mr. Gandy's constitutional rights and deprived him of a fair trial as follows:

a) Mr. Gandy is entitled to relief under Article 11.073, T.C.C.P. because scientific ballistic analysis testimony was presented at his jury trial by FBI agent John P. Riley, testified that test on bullets found in applicant's residence, his vehicle, in co-defendant Foster's residence, and in the restaurant showed that some of the bullets from each of these places could have come from the same box of ammunition. This testimony was false, misleading and inflammatory to the jury and gave inference that bullets found at the crime scene and defendants' residences came from the same box of ammunition. (Transcript R. VI, 427). He found that the composition of the bullets fell into two groups. (Transcript R. IX, Exhibit 28 presented at trial). His testimony went on to state that "His opinion was that the bullets within each group typically are found within the same box of cartridges but pointed out that they could have come from any group of boxes manufactured at the location and about same date, but it is most likely they came from the same box of ammunition. (Transcript R. VI, 428-429; IX, Exhibit 28, presented at trial).

   a. The State stipulates and concedes in its proposed findings of fact and conclusions of law and order after remand to the foregoing facts pages 3-6. They went on to stipulate that, during closing arguments, the State argued, among other things, that

while Riley's report may not be enough circumstantial evidence in and of itself, when combined with all the other evidence, the pieces come together (VI R.R. at 625-26); that Riley's report indicates that bullets that are analytically indistinguishable typically come from the same box of ammunition (VI R.R. at 648); and that it was most likely the bullets came from the same box of ammunition as it would be introduced by the same manufacturer on the same date (VI R.R. at 648); that Riley's report shows that Clayvell Richard is not just lying about everything (VI R.R. at 648-49).

b. Applicant filed a certified copy of the testimony provided by Clayvell Richard, the witness accomplice to show the court that the conviction was based upon the perjured testimony of a witness accomplice. The only person to implicate applicant in the crime and the false testimony of F.B.I. special agent John P. Riley the ballistics expert used to corroborate that witness, thus but for the false testimony of these two witnesses no rational trier of facts could have rendered a conviction in this case.

c. The trial court concluded that the State's closing argument coupled with the expert testimony squarely mislead the jury and prejudiced the defense at trial, causing the jury to believe that the expert testimony was independent corroboration to support a finding of guilt. The jury was given instructions during guilt innocence phase, that they must find independent testimony or evidence to corroborate the witness accomplish, Clayvell Richard testimony in order to make a finding of guilt.

d. The trial court finds applicant was prejudiced at his jury trial by false, misleading or prejudicial expert testimony given by FBI agent John P. Riley.

    e. Applicant filed a certified affidavit of Dr. Marc LeBeau, the F.B.I. Senior Forensic Scientist dated May 03, 2018 indicating that the testimony of F.B.I. agent John P. Riley's testimony during applicant's trial exceeded the limits of the science and was not supported by the F.B.I. He indicated the F.B.I.'s review of the CBLA testimony from this case did find at least one instance (on page 426-429 of the reviewed transcript) in which it was interpreted that FBI Supervisory Special Agent Riley stated or implied that evidence from the case could be associated to a single box of ammunition.

    f. Applicant has shown by a preponderance of evidence that, but for the false testimony of Riley, the applicant would not have been convicted of aggravated robbery as the case was based upon circumstantial evidence only.

    g. The trial court finds that applicant should be granted relief because the expert witness testimony denied him a fair trial and due process as the testimony was relevant, material and prejudicial, and but for his testimony applicant would not have been found guilty of aggravated robbery.

10. On May 18, 2019, the Texas Court of Criminal Appeals vacated Mr. Gandy's conviction and sentence. Mr. Gandy had already been at liberty on parole for 15-years at the time his conviction was vacated. The mandate issued on June 04, 2019.

11. Plaintiff Robert Gandy, herein incorporates by reference **Exhibits A** Trial court findings of fact and conclusions of law, Court of Criminal Appeals opinion and mandate, copy of the certified affidavit from the FBI regarding the false testimony, and copy of the certified trial transcript evidencing the false testimony of co-defendant Clayvell Richard used by the prosecution to convict Mr. Gandy.

## FACTS

### A. A History of Wrongful Convictions in Harris County, Texas

12. According to the Fair Punishment Project of Harvard Law School, Harris County is one of the country's "outlier counties" regarding its number of death sentences and executions. Harris County juries have imposed the death penalty on more defendants than any other county in the United States since the 1976 reinstatement of the death penalty, and all condemned from 2004 through fall of 2016 are minorities. *See Too Broken to Fix: Part I, An In-depth Look at America's Outlier Death Penalty Counties,* http://fairpunishment.org/wp-content/uploads/2016/08/FPP-TooBroken.pdf (last visited June 7, 2017).

13. Harris County is also one of the most notorious counties for wrongful convictions and exonerations. According to the National Registry of Exonerations at the University of Michigan Law School, in 2015 there were 149 people exonerated from twenty-nine states after serving an average of fourteen and a half years in prison. Fifty-four of those were from Texas and forty-two were from Harris County. In 2014, there were 125 wrongfully convicted people were exonerated; thirty-one of them came from Harris County alone. *See* https://www.law.umich.edu/special/exoneration/Pages/about.aspx (last visited June 7, 2017).

14. Fifty-two percent (52%) of Harris County's exonerees were African-American even though they make up less than 20 percent of the Harris County population.

## **CAUSES OF ACTION**

### **COUNT 1:**

**42 U.S.C. §1983 CLAIM FOR VIOLATIONS OF FOURTEENTH AMENDMENT DUE PROCESS AND FAIR TRIAL RIGHTS BY USE OF FALSE, MISLEADING AND OR PERJURED TESIMONY**
**Against Defendants Harris County, Kim Ogg, and Steve Baldassano**

15. Plaintiff, ROBERT GANDY, hereby incorporates by reference those allegations made in the preceding paragraphs.

16. Defendants Harris County, Steve Baldassano, Kim Ogg knowingly, willingly, negligently and or recklessly caused the wrongful charging, prosecution, conviction, and imprisonment of Mr. Gandy in violation of his constitutional right to a fair trial through use of false, misleading and or perjured testimony.

17. In engaging in the conduct described in the preceding paragraphs, Defendant(s) thereby unconstitutionally deprived Mr. Gandy of his liberty and violated his rights to a fair and impartial trial, as guaranteed by the Fourteenth Amendment to the United States Constitution. Defendants acted intentionally and with malice, or deliberate indifference and or reckless disregard, in violation of Mr. Gandy's rights pursuant to 42 U.S.C. §1983.

18. Defendant Harris County condoned the wrongful pattern, custom, and practice of use of junk science, use of false testimony to secure convictions as it failed to stop Defendant Baldassano's behavior.

19. The Defendants' use of false witnesses testimony denied Mr. Gandy liberty without due process of law, and as a proximate result of their unconstitutional actions, Mr. Gandy sustained substantial compensatory damages.

20. Because these Defendants acted maliciously, willfully, wantonly, and/or with reckless disregard for Plaintiff's constitutional rights, the Court should award substantial punitive damages, plus the costs of this action, attorneys' fees, and such other relief as this Court deems

equitable and just.

## COUNT 2:

### 42 U.S.C. §1983 CLAIM FOR VIOLATING ROBERT GANDY'S FOURTEENTH AMENDMENT RIGHT TO A FAIR TRIAL BY FAILING TO DISCLOSE MATERIAL EXCULPATORY AND IMPEACHMENT EVIDENCE
### Against Defendants Harris County, Kim Ogg, and Steve Baldassano

21. Plaintiff, ROBERT GANDY, hereby incorporates by reference those allegations made in the preceding paragraphs.

22. Defendants Harris County and Kim Ogg and Steve Baldassano withheld exculpatory evidence of witness statement signed by Clayvell Richard prior to trial and presented to Harris County DA which, if presented at trial, would have corroborated Mr. Gandy's assertion that Clayvell Richard testimony was perjury, and false. The State prosecutor claimed the statement was lost or missing.

23. Defendant Baldassano engaged in the conduct described willfully, maliciously, in bad faith, and in reckless disregard of the Mr. Gandy's federally protected constitutional rights.

24. The knowing, deliberate, and intentional wholesale suppression of exculpatory evidence or information from Mr. Gandy to use in his defense of the most serious criminal charges lodged against him was an unconstitutional deprivation of his rights in violation of his rights pursuant to 42 U.S.C. §1983.

25. The Defendants' deliberate failure to make the required disclosures denied Mr. Gandy liberty without due process of law, and as a proximate result of their unconstitutional actions, Mr. Gandy sustained substantial compensatory damages.

26. Because these Defendants acted maliciously, willfully, wantonly, and/or with reckless disregard for Plaintiff's constitutional rights, the Court should award substantial punitive damages, plus the costs of this action, attorneys' fees, and such other relief as this Court deems equitable and just.

## COUNT 3:

### CLAIM FOR CREATING UNCONSTITUTIONAL CUSTOMS, POLICIES, AND PRACTICES, COGNIZABLE UNDER 42 U.S.C. § 1983 AND THE 5TH, 8TH, AND/OR 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION
### Against Defendant Harris County

27. Plaintiff, ROBERT GANDY, hereby incorporates by reference those allegations made in the preceding paragraphs.

28. Defendant Harris County was at all times material to this complaint the employer of Defendant Baldassano and others through the Harris County District Attorney's Office.

29. The violations of Mr. Gandy's civil and constitutional rights, as set forth herein, were the direct and proximate results of Defendant Harris County's then-existing customs, policies and practices. Defendant Harris County expressly or tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein and knew or should have known that such conduct was unjustified and would result in violations criminal defendants' constitutional rights, including those of Mr. Gandy.

30. Defendant Harris County's official and unofficial policies and customs were to employ Assistant District Attorneys who were inadequately trained and supervised with respect to their duty to disclose to defense counsel all material exculpatory and impeachment evidence and/or to verify the veracity of the evidence its attorneys presented at trial in violation of Mr. Gandy's rights pursuant to 42 U.S.C. §1983.

31. Defendant Harris County also had an official or unofficial policy, custom, and practice of encouraging Assistant District Attorneys to aggressively pursue convictions regardless of the weight of the evidence against a particular defendant; to secure favorable witness testimony at any cost, including unlawful means of pressure and intimidation; to unethically solicit false testimony from witnesses, so long as it is favorable; and to otherwise do whatever it takes to convict a defendant.

32. Defendant Harris County's official and unofficial policies, customs, and practices were essentially to knowingly, willfully, and intentionally disregard the constitutional rights of the defendants it sought to convict.

33. John B. Holmes, Jr. was the District Attorney of Harris County, Texas for 21 years. Mr. Holmes served as the District Attorney during the arrest, prosecution, and wrongful conviction of Mr. Gandy. John B. Holmes, Jr. was a key policymaker who allowed or encouraged his prosecutors to manipulate witness recollections, fail to keep or maintain adequate records, manufacture evidence, and fail to disclose material exculpatory and impeachment evidence to defense counsel.

34. The Harris County District Attorney's Office has a legacy of callously glamorizing its approach to the death penalty, from former District Attorney Johnny Holmes, Jr.'s "Silver Needle Society," to a sign in the office listing all the Defendants who were executed from the County, to a rock cover band comprised of Harris County District Attorneys named "Death by Injection."

35. Mr. Rosenthal boasted in campaign advertisements that he sent 14 individuals to death row "where they belong."

36. In 2008, Mr. Rosenthal was personally found in contempt for deleting more than 2,500 emails after they were subpoenaed in a federal civil rights lawsuit. Consistent with the patterns of practice from Mr. Rosenthal's office during this time period, this example shows the District Attorney had no respect for the legal system and he, himself, was willing to destroy or otherwise manipulate evidence.

37. Former District Attorney Pat Lykos sought to change Mr. Holmes' and Mr. Rosenthal's models by establishing a Post-Conviction Review Section in 2009. Ms. Lykos served one term as District Attorney.

38. Ms. Lykos's successor, Mike Anderson, was elected with a campaign promise to return to the "good old days" of Mr. Holmes and Mr. Rosenthal. In fact, Mr. Anderson invited Mr. Holmes to speak to Harris County District Attorneys in a mandatory ethics training after he was elected. Tragically, Mr. Anderson died of cancer after eight months in office, and his widow, Devon Anderson, served until the current District Attorney Kim Ogg was elected in 2016.

39. The conviction culture and "us *vs.* them" mindset within the Harris County District Attorney's Office was presented during a mandatory ethics training for prosecutors on January 31, 2013, after Mr. Anderson was elected. This publicly available training video provided a window into how Assistant District Attorneys are trained.

40. In Mr. Anderson's opening remarks, he stated that prosecutors were "maligned" by groups like the Innocence Project. Mr. Anderson then stated that the Texas District and County Attorney Association ("TDCAA") had a mission to challenge the Innocence Project and said that the TDCAA "had their backs." Mr. Anderson ended his remarks by stating that "we will kick your butt if it needs to be kicked." *See* https://www.youtube.com/watch?v=FeS-fef4Vm4 (last visited June 7, 2017).

*41.* After Mr. Holmes presented to the group, Rob Kepple, the Executive Director of TDCAA and former Assistant District Attorney in Harris County, trained the group for over an hour. In the presentation, Mr. Kepple made troubling analogies to a history of cheating in professional sports and also praised multiple prosecutors for resisting a defendant's request to conduct DNA testing. In fact, Mr. Kepple stated that it was "legal and ethical" to resist DNA testing. *Id.*

42. Mr. Kepple also relayed a story that when he was an Assistant District Attorney in Harris County, he bragged that he once made an improper statement in court about a defendant

failing to testify in a trial, and he was sanctioned by being ordered to sit in a courtroom for an entire day, making light of unconstitutional conduct.

43. Mr. Kepple also stated that the Innocence Project was a "paper tiger" and mocked its work. *Id.*

44. The *Houston Chronicle* stated that "a video of a mandatory ethics training class at the district attorney's office has confirmed those fears [about resorting to the past] about our new district attorney" and that the video "contains far too many troubling moments to be dismissed as an out-of-context fluke." Ethics Training Confirms Fears About Prosecutors Mindsets, *Houston Chronicle*, February 28, 2013. This video underscores the unconstitutional legacy of the Harris County District Attorney's Office and its training failures.

45. Mr. Kepple and TDCAA do acknowledge, however, that *Brady* issues are serious, and in a report entitled *Setting the Record Straight on Prosecutorial Misconduct*, stated that "the troubling news is that *Brady* violations often play a role in the few confirmed cases of prosecutorial misconduct." TDCAA, *Setting the Record Straight on Prosecutorial Misconduct*, September 12, 2012.

46. This troubling news is evident in Harris County. A pattern of systemic *Brady* violations show that Defendant Harris County failed to train its prosecutors, resulting in a fundamentally flawed misunderstanding of the duty to disclose evidence. Moreover, Defendant Harris County sanctions these common, consistent *Brady* violations by accepting them and failing to properly address them.

47. Most recently, on November 23, 2016, in *Ex Parte David Mark Temple*, the Court of Criminal Appeals overturned the defendant's conviction and held that former Harris County Assistant District Attorney Kelly Siegler committed 36 instances of misconduct and had a "misconception" regarding her duty under *Brady* that was "of enormous significance."

Ms. Siegler maintained that she was not required to turn over favorable evidence if she did not believe it to be relevant, inconsistent, or credible. The Court noted her misconception "when it came to what constituted *Brady* evidence, her opinion is what mattered." This misconception is a result of the training failure by Harris County regarding a prosecutor's *Brady* obligations.

48. In *Temple*, the Court cited a troubling Harris County District Attorney's Office policy – that if a defense counsel asked for an examining trial, the prosecution would "close" its file and not give any information over to the defense. This troubling policy is also indicative of Defendant Harris County's training failures.

49. The *Houston Chronicle* reported on the *Temple* case and quoted JoAnne Musick, former president of the Harris County Criminal Lawyers Attorneys Association and current Chief of Sex Crimes at the Harris County District Attorney's Office. Ms. Musick stated that the *Temple* case and others illustrated troubling problems with Harris County prosecutors' conduct in murder cases and that evidence was withheld by "the same group of prosecutors that were all trained in the same era and came from the same culture." Temple Murder Conviction Tossed, *Houston Chronicle*, November 24, 2016. This further exemplifies Harris County's training failure.

50. Ms. Musick also wrote an article for the Harris County Criminal Lawyers Association entitled *Harris County – We Have a Brady Problem*, in which she noted the numerous examples of cases involving *Brady* violations in Harris County. In addition to the *Temple* case noted above, the article notes several other troubling examples. *See* http://www.musicklawoffice.com/wp-content/uploads/2016/05/BRADY-Defender-Fall-2016.pdf (last visited June 7, 2017).

51. One of the examples is *Ex Parte Linda Carty*, in which Harris County District Attorneys Connie Spence and Craig Goodhart committed *Brady* violations in that they failed to

disclose witness statements that conflicted with or were inconsistent with what was represented to the defense. Prosecutors also failed to disclose a witness statement stating that the witness did not believe Carty to be a danger to society and failed to disclose a deal with another witness that was made.

52. The trial court in *Carty* held that the Harris County District Attorney's Office operated under a misunderstanding of *Brady* in that similar to Ms. Siegler's misconception and that the prosecutors operated on "gut instinct" and "judgment calls" and did not believe that such evidence needed to be disclosed if they did not find the testimony credible. This improper pattern of determining *Brady* on a prosecutor-by-prosecutor basis relying on independent and individual "gut instincts" and "judgment calls" is a further demonstration of Harris County's training failure.

53. In *Ex Parte Edward McGregor*, Harris County District Attorney Elizabeth Shipley Exley tried the defendant in Fort Bend County as she was simultaneously prosecuting the defendant in a separate murder case in Harris County. In *McGregor*, Ms. Exley did not disclose deals made with jailhouse informants regarding a parole recommendation and pending cases. Ms. Exley stated that, because there was no specific promise for a deal, she "could" notify parole or the pending court about the witnesses' cooperation, but that she was not obligated to disclose the information. After McGregor's trial, one informant received a favorable letter written on her behalf to the parole board, and two witnesses received favorable plea agreements. The Court of Criminal Appeals remanded the case to the trial court for further findings on the issue on April 26, 2017. Ms. Exley's understanding of *Brady* was erroneous and further demonstrates Harris County's training failure.

54. In *Ex Parte Kenneth Headley*, former Harris County District Attorney Rob Freyer struck a very favorable deal with an eyewitness – misdemeanor time served on two felony

charges in exchange for her testimony at the grand jury and at trial. Mr. Freyer stated that he did not have a duty to disclose the deal, because he would have raised it during direct examination of the witness if he tried the case. However, the case was transferred to another Assistant District Attorney, and the deal was not introduced. The Texas Court of Criminal Appeals reversed and ordered a new trial. Mr. Freyer's misconception about his duty to disclose further demonstrates Harris County's training failure.

55. In *State v. Glen Kahlden*, the trial court held that the Chief of the District Attorney's Child Abuse Division failed to notify defense attorneys that the child victim in the case initially stated that she had been assaulted by a black man when the Defendant was white. Although the court held that "the state has the duty to disclose, and the district attorneys should have revealed the information," a mistrial was denied because it was discovered during trial. The Harris County District Attorney's Office's fundamentally flawed understanding of the timing and content of a *Brady* disclosure further demonstrates Harris County's training failure.

56. Therefore, Defendant Harris County performed acts pursuant to municipal policies, practices, customs and usages, which ratified, tolerated, acquiesced in, maintained, authorized, and permitted the following unconstitutional conduct:

a. The knowing deliberate and intentional wholesale suppression of exculpatory evidence or information of favorable value from Mr. Gandy and his lawyers to use in his defense of the most serious criminal charges brought against him.

b. Enabling Defendant Baldassano to engage in unconstitutional conduct of malicious prosecution of Mr. Gandy, deliberately undermining Mr. Gandy's right to a fair trial, right to due process of law, and the right to equal protection of the law.

c. Permitting the Harris County District Attorney's Office and its employees, specifically Defendant Baldassano, to purchase or make deals for the perjured testimony of witnesses which played a significant role in the malicious prosecution of Mr. Gandy and resulted in his wrongful imprisonment.

d. Tolerating misconduct on behalf of the Harris County District Attorney's Office and its employees, such as Defendant Baldassano, including the concealment of exculpatory evidence, the continued malicious prosecution of Mr. Gandy, and the wrongful imprisonment of Mr. Gandy.

e. Failing to adequately train, supervise, monitor, control, and discipline its Assistant District Attorneys, including Defendant Baldassano and other employees, for engaging in a continuous pattern of shocking misconduct, which has led to innocent people, including Mr. Gandy, being tried, convicted, and imprisoned for crime which they did not commit.

f. Condoning and emboldening the Defendants to engage in misconduct, in the belief that they could violate Mr. Gandy's rights with the knowledge that such flagrant conduct would not adversely affect opportunities for job promotion and benefits.

g. Refusing to discipline Assistant District Attorneys, including Defendant Baldassano and other employees, with demonstrable histories of engaging in unethical and unprofessional misconduct; prosecuting cases that resulted in the wrongful imprisonment of

innocent individuals, including Mr. Gandy; and acting in concert with other prosecutors so as to cause the wrongful prosecution and imprisonment of individuals, such as Mr. Gandy.

    h. Allowing Harris County District Attorney's Office and its Assistant District Attorneys, including Defendant Baldassano and other employees, to engage in subornation of perjured testimony in their quest to secure a conviction and engage in malicious prosecution and false imprisonment, as was done in this case.

57. Mr. Gandy has been damaged as a proximate result of Defendant Harris County's unconstitutional policies, customs, and practices, as described herein. Mr. Gandy is entitled to substantial compensatory damages and, because Defendant Harris County acted maliciously, willfully, wantonly, and/or with reckless disregard for his constitutional rights, to substantial punitive damages, plus the costs of this action, attorneys' fees, and such other relief as this Court deems equitable and just.

## COUNT 4:

### 42 U.S.C. §1983 SUPERVISORY LIABILITY CLAIM
### Against Harris County

58. Plaintiff, ROBERT GANDY, hereby incorporates by reference those allegations made in the preceding paragraphs.

59. Defendant supervisors in the Harris County District Attorney's Office failed to adequately train and supervise Defendant Baldassano, and other individuals who were employed by Harris County, with respect to investigative techniques regarding the prosecution of an individual, including the duty to avoid coaching witnesses, the duty to disclose manipulation of witness recollections, the duty to disclose material exculpatory and impeachment evidence to defense counsel, proper methods of securing evidence, and proper methods of locating suspects and pursuing known and exculpatory leads.

60. Defendants failed adequately to train and supervise Defendant Baldassano and

others who were employed by Harris County, with deliberate indifference to the known and obvious consequences that deprivations of due process would result.

61. As a direct and proximate result of Defendant Harris County's failure to supervise Defendant Baldassano and others who were employed by Harris County, Mr. Gandy was denied due process when these individuals engaged in the conduct set forth herein.

62. As a proximate result of the actions of Defendant Harris County, Mr. Gandy sustained substantial compensatory and economic damages.

## DAMAGES

63. As a result of Defendants' conduct, Mr. Gandy sustained damages far exceeding the minimum jurisdictional limits of this court.

## JURY DEMAND

64. Plaintiff hereby demands a jury trial of all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court enter judgment against each Defendant and grant:

a. Compensatory and consequential damages to Plaintiff as compensation for all injuries and losses Plaintiff suffered which were caused by the willful, reckless, negligent and/or deliberately indifferent acts of Defendants, in the amount of $1 Million for each year served in prison and on supervised parole; Plaintiff seeks $30 Million for the 30-years deprivation of his liberty through violation of his constitutionally protected rights.

b. Punitive damages on all claims and against such Defendants as allowed by law, in an amount to be determined at trial;

c. Costs associated with this action, including reasonable attorneys' fees under

42 U.S.C. §1988;

       d.     Prejudgment and post-judgment interest as allowed by law; and

       e.     Any further relief that this Court deems just and proper, and any other appropriate relief available at law and equity.

Date: September 11, 2019                   Respectfully submitted,

                                             By: */s/ Robert Gandy*
                                                  Robert Gandy, Pro Se
                                                  9550 Spring Green Blvd Ste 408
                                                  Katy, TX. 77494
                                                  (832) 654-3107 Telephone
                                                  E-Mail: Robertgandy12@yahoo.com