**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ROBERT GANDY,** | § | |
| *Plaintiff* | § | |
| **v.** | § | **Civil Action No. 4:19-cv-03487** |
| | § | **Jury Demand** |
| **HARRIS COUNTY,** | § | |
| **JOHN P. RILEY and** | § | |
| **the UNITED STATES** | § | |
| **OF AMERICA** | § | |
| *Defendants.* | § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, ROBERT GANDY, files this Second Amended Complaint against Defendant; HARRIS COUNTY, adding JOHN P. RILEY AND UNITED STATES OF AMERICA pursuant to F.R.C.P. Rule 20 Permissive Joinder and would show the following:

### STATEMENT OF THE CASE

1.      Plaintiff is a victim of an egregious miscarriage of justice that resulted in his imprisonment in violation of his Fourteenth Amendment rights to Due Process and a Fair Trial afforded under the United States Constitution. Plaintiff's conviction was based upon the Harris County District Attorney's use of false, misleading and or perjured testimony and or junk science to obtain his conviction through expert witness John P. Riley, FBI Special Agent, Forensics Investigator, Clayvell Richard, states key witness and withholding material exculpatory evidence from Plaintiff's defense.

2.      Defendant Harris County is a governmental entity organized under the laws of the State of Texas. Harris County is sued for the constitutional harm suffered by Plaintiff as a

result of the Harris County District Attorney's Office, official and unofficial policies and customs, including but not limited to: Harris County District Attorneys pattern or practice of failing to adhere to their ethical and constitutional obligations to disclose exculpatory material and impeachment evidence to criminal defendants; prosecutors pursuing conviction of criminal defendants regardless of the weight of the evidence against them "Win-at-All Cost" culture; fostering widespread disregard for the constitutional rights of the accused; permitting District Attorneys to employ unlawful tactics, such as use of false testimony, to secure favorable witness testimony; and general inadequate management and administration of the District Attorney's Office.

3.      The Defendant through the actions of its chief policy maker, Harris County District Attorney's Office caused Plaintiff to be deprived of his constitutional rights to a fair trial and directly causing the loss of liberty of 15-years of his life through imprisonment in the Texas Department of Criminal Justice and 15-years of his liberty on parole with the Texas Department of Criminal Justice.

4.      This complaint arises from the intentional tortuous actions of malicious prosecution and wrongful imprisonment as a direct result of the actions taken by FBI Special Agent, John P. Riley a/k/a John "Jack" Riley, Forensic Investigator. Plaintiff is a victim of an egregious miscarriage of justice that resulted in his wrongful imprisonment in violation of his clearly established Fifth and Fourteenth Amendment rights of Due Process and a Fair Trial afforded under the United States Constitution. Defendant, John P. Riley, deprived Plaintiff of his liberty by providing false and misleading testimony at trial.  Defendant Riley acted with deliberate indifference to Plaintiff's clearly established constitutional rights. Plaintiff's conviction was based upon the State of Texas prosecutor's use of false, misleading and or

perjured testimony and or junk science to obtain his conviction through expert witness Defendant Riley, while acting in the course and scope of his employment as an employee of the Federal Bureau of Investigation.

5.     The Defendants' conduct caused Plaintiff to be deprived of his constitutional rights to a fair trial which was a proximate cause of his wrongful imprisonment, loss of earnings, loss of earning capacity, mental anguish, and pain and suffering through 15-years of wrongful imprisonment in the Texas Department of Criminal Justice and 15-years of parole with the Texas Department of Criminal Justice.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction under 28 U.S.C. §1331, 42 U.S.C. §1983 and §1988, and supplemental jurisdiction under 28 U.S.C. §1367(a), to hear Plaintiff's state law claims, if any.

7.     Venue is proper in the Southern District of Texas under 28 U.S.C. §1391(b) because that is the judicial district in which the claims arose and in which defendant resided or conducted business during the relevant period herein.

8.     This Court has jurisdiction under Federal Tort Claims Act 28 U.S.C. Part VI, Chapter 171, 28 U.S.C. §2671, et seq., and supplemental jurisdiction under 28 U.S.C. §1346(b), 2675 to hear Plaintiff's Federal Tort Claim Act claim. Plaintiff submitted his Standard Form 95 claim to The Federal Bureau of Investigations-Department of Justice on September 10, 2019.The Federal Bureau of Investigations-Department of Justice denied Plaintiff's Form 95 claim six months from the date of filing.

9.     Venue is proper in the Southern District of Texas under 28 U.S.C. §1331and§1391(b)(2) and 1391(e)(1)(B)(C) because this is the judicial district in which the claims

arose, and in which Defendants maintained offices and conducted business during the relevant period herein.

## PARTIES

10.     Plaintiff, ROBERT GANDY, is an individual residing in Fort Bend County, Texas. Defendant, Harris County, is a political subdivision of the State of Texas, and the Harris County District Attorney's Office is an agency of Defendant, Harris County, hereinafter referred to as (HCDAO). Defendants, UNITED STATES OF AMERICA, and John P. Riley are being sued for the actions of its employee, John P. Riley, FBI Special Agent acting in his official capacity.

## PROCEDURAL HISTORY

11.     Mr. Gandy was convicted of Aggravated Robbery on September 19, 1990 in the 351st District Court of Harris County, Texas, and was sentenced to Life in prison.

12.     On August 02, 2018, the Honorable George Powell, Presiding Judge, 351st District Court, signed an "Agreed Proposed Findings of Fact and Conclusions of Law and Order" ("Findings of Fact"). In that document, the Court held that the State use of false, misleading and or perjured testimony violated Mr. Gandy's constitutional rights and deprived him of a fair trial as follows:

13.     Mr. Gandy is entitled to relief under Article 11.073, T.C.C.P. because scientific ballistic analysis testimony was presented at his jury trial by FBI agent John P. Riley, testified that test on bullets found in applicant's residence, his vehicle, in co-defendant Foster's residence, and in the restaurant showed that some of the bullets from each of these places could have come from the same box of ammunition. This testimony was false, misleading and inflammatory to the jury and gave inference that bullets found at the crime scene and defendants' residences came from the same box of ammunition." (Transcript R. VI, 427). He

found that the composition of the bullets fell into two groups. (Transcript R. IX, Exhibit 28 presented at trial). His testimony went on to state that "his opinion was that, "the bullets within each group typically are found within the same box of cartridges but pointed out that they could have come from any group of boxes manufactured at the location and about same date, but it is most likely they came from the same box of ammunition. (Transcript R. VI, 428-429; IX, Exhibit 28, presented at trial).

a.  On or about January 30, 2018, Plaintiff filed his Application for a Writ of Habeas Corpus in the Texas Court of Criminal Appeals with Agreed Proposed Findings of Fact and Conclusions of Law and Order entered by the trial Court on August 2, 2018.The HCDAO stipulated and conceded in its proposed findings of fact and conclusions of law and order after remand to the foregoing facts pages 3-6. They went on to stipulate that, during closing arguments, the State argued, among other things, that while Riley's report may not be enough circumstantial evidence in and of itself, when combined with all the other evidence, the pieces come together (VI R.R. at 625-26); that Riley's report indicates that bullets that are analytically indistinguishable typically come from the same box of ammunition (VI R.R. at 648); and that it was most likely the bullets came from the same box of ammunition as it would be introduced by the same manufacturer on the same date (VI R.R. at 648).

b.  Plaintiff filed a certified copy of the testimony provided by Clayvell Richard, the witness accomplice to show the court that the conviction was based upon the perjured testimony of a witness accomplice.  The only person to implicate applicant in the crime and the false testimony of F.B.I. special agent John P. Riley the ballistics expert used to corroborate that witness, thus but for the false testimony of

these two witnesses no rational trier of facts could have rendered a conviction in this case.

c. The trial court concluded that the State's closing argument coupled with the expert testimony squarely mislead the jury and prejudiced the defense at trial, causing the jury to believe that the expert testimony was independent corroboration to support a finding of guilt. The jury was given instructions during guilt innocence phase, that they must find independent testimony or evidence to corroborate the witness accomplice, Clayvell Richard testimony in order to make a finding of guilt.

d. The trial court found Plaintiff was prejudiced at his jury trial by false, misleading and prejudicial expert testimony given by FBI agent John P. Riley.

e. Plaintiff filed a certified affidavit of Dr. Marc LeBeau, the F.B.I. Senior Forensic Scientist dated May 03, 2018 indicating that the testimony of F.B.I. agent John P. Riley's during Plaintiff's trial exceeded the limits of the science and was not supported by the F.B.I.   Dr. LeBeau affirmed the F.B.I.'s review of the CBLA testimony from this case did find at least one instance (on page 426-429 of the reviewed transcript) in which it was interpreted that FBI Supervisory Special Agent Riley stated or implied that evidence from the case could be associated to a single box of ammunition.

f. Plaintiff has shown by a preponderance of evidence that, but for the false testimony of F.B.I. agent Riley, the Plaintiff would not have been convicted of aggravated robbery as the case was based upon circumstantial evidence only.

g. The trial court finds that Plaintiff should be granted relief because the expert witness testimony denied him a fair trial and due process as the testimony was relevant,

material and prejudicial, and but for his testimony Applicant would not have been found guilty of aggravated robbery.

14.     On May 18, 2019, the Texas Court of   Criminal Appeals vacated Plaintiff's conviction and sentence. Plaintiff had already been at liberty on parole for 15-years at the time his conviction was vacated. The mandate issued on June 04, 2019.

15.     Plaintiff Robert Gandy herein incorporates by reference **Exhibit A** filed in the original complaint.

## CAUSES OF ACTION

## COUNT 1:

### 42 U.S.C. §1983 CLAIM FOR VIOLATIONS OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENT DUE PROCESS AND FAIR TRIAL RIGHTS BY USE OF FALSE, MISLEADING AND OR PERJURED TESIMONY AGAINST DEFENDANT HARRIS COUNTY

16.     Plaintiff, ROBERT GANDY, hereby incorporates by reference those allegations made in the preceding paragraphs.

17.     Defendants Harris County, through its employees acting under color of State law namely, Steve Baldassono, former assistant district attorney for Harris County under leadership of former district attorney Johnny B. Holmes and now successor in office Kim Ogg, knowingly, willfully, negligently and or recklessly caused the   wrongful  conviction, and wrongful imprisonment  of  Plaintiff in violation of his constitutional right to a fair trial through use of false, misleading and or perjured testimony, and withholding exculpatory evidence.

18.     By engaging in the conduct described in the preceding paragraphs, HCDAO thereby unconstitutionally deprived Plaintiff of his liberty and violated his rights to a fair and impartial trial, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. The HCDAO acted intentionally and with malice, or deliberately indifferent and

or in reckless disregard to Plaintiff's rights pursuant to 42 U.S.C.§1983.

19.     Defendant Harris County condoned the wrongful pattern, custom, and practice of use of junk science, use of false testimony, illegal suppression of favorable evidence known as Brady evidence to secure convictions as it failed to stop or condemn HCDAO's wrongful conduct.

20.     Defendant Harris County condoned the wrongful pattern, custom, and practice of the HCDAO "whatever it takes to win" policy, custom or practice and the unlawful means of pressure and intimidation; creating a "conviction culture' and "do whatever it takes" policy encouraged by the sequence of DA's and ADA'S in the HCDAO.

21.     The HCDAO's use of false witnesses testimony and illegal suppression of favorable evidence, denied Plaintiff his liberty without due process of law, and as a proximate result of their unconstitutional actions, Plaintiff sustained substantial pain, suffering, mental anguish and compensatory damages.

22.     Because the HCDAO acted maliciously, willfully, wantonly, and/or with reckless disregard and deliberate indifference to Plaintiff's constitutional rights, the Court should award substantial damages, plus the costs of this action, attorneys' fees, and such other relief as this Court deems equitable and just.

## COUNT 2:

**42 U.S.C. §1983 CLAIM FOR VIOLATING ROBERT GANDY'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS TO A FAIR TRIAL BY FAILING TO DISCLOSE MATERIAL EXCULPATORY AND IMPEACHMENT EVIDENCE TO PLAINTIFF.**

23.     Plaintiff, ROBERT GANDY, hereby incorporates by reference those allegations made in the preceding paragraphs.

24.     Defendants Harris County through its Chief District Attorney Policy Makers,

District Attorney Johnny B. Holmes, Jr. and his successors-in-office, and through its former Assistant District Attorney Steve Baldassano, withheld exculpatory evidence (Brady) of the witness statement signed by Clayvell Richard prior to trial, and presented to Harris County Assistant District Attorney Baldassono which, if presented at trial, would have corroborated Plaintiff's assertion that Clayvell Richard's testimony was perjured, and false; resulting in an acquittal. The HCDAO has claimed the statement was lost or missing.

25.     The HCDAO also withheld the favorable agreement they entered into with the States key witness, Clayvell Richard in exchange for his testimony against Plaintiff.  HCDAO was required to reveal its agreement with Clayvell Richard pursuant to the trial court's order that the State reveal all agreements it entered into with any State witness. The HCDAO never produced the agreement and did not reveal it to Plaintiff's counsel prior to trial. The HCDAO failed to correct the false testimony of its witness Clayvell Richard, when he testified falsely under oath that there was no plea deal between him and the HCDAO and he was testifying of his own free will. Thus, HCDAO knowingly sponsored perjured testimony at trial.

26.     Harris County Assistant District Attorney Steve Baldassono engaged in the conduct described above willfully, maliciously, in bad faith, in reckless disregard, and with deliberate indifference to Plaintiff's federally protected and clearly established constitutional rights.

27.     The knowing, deliberate, and intentional wholesale suppression of exculpatory evidence or information from Plaintiff to use in his defense of the most serious criminal charges lodged against him was an unconstitutional deprivation of his rights in violation of the Fifth and Fourteenth Amendments.

28.     The HCDAO deliberate failure to make the required disclosures denied Plaintiff

his liberty without due process of law, and as a proximate result of the HCDAO's unconstitutional actions, Plaintiff sustained substantial compensatory damages.

29.     Because the HCDAO acted maliciously, willfully, wantonly, and/or with reckless disregard, and deliberate indifference to Plaintiff's constitutional rights, the Court should award substantial  damages, plus the costs of this action, attorneys' fees, and such other relief as this Court deems equitable and just.

### COUNT 3:

### CLAIM FOR CREATING UNCONSTITUTIONAL CUSTOMS, POLICIES, AND PRACTICES, COGNIZABLE UNDER 42 U.S.C. § 1983 IN VIOLATION OF THE 5TH, AND/OR 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AGAINST DEFENDANT HARRIS COUNTY

30.     Plaintiff, ROBERT GANDY, hereby incorporates by reference those allegations made in the preceding paragraphs.

31.     Defendant Harris County was at all times material to this complaint the employer of former Assistant District Attorney Baldassono and others through the Harris County District Attorney's Office.

32.     The violations of Plaintiff's civil and constitutional rights, as set forth herein, were the direct and proximate results of the HCDAO then-existing customs, policies and practices. The HCDAO expressly or tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein and knew or should have known that such conduct was unjustified and would result in violations of criminal defendants' constitutional rights.

33.     Defendant Harris County also had an official or unofficial policy, custom, and practice through its chief policy makers District Attorney Johnny B. Holmes, Jr. and his successors-in-office, and through its former assistant district attorney Steve Baldassono of encouraging Assistant District Attorneys to aggressively pursue convictions regardless of the

weight of the evidence against a particular defendant; to secure favorable witness testimony at any cost, including unlawful means of suppressing favorable evidence (known as Brady material); to unethically solicit false expert testimony, and/or knowingly accept false testimony from witnesses, so long as it is favorable; and to otherwise do whatever it takes to convict a defendant.

34.     Defendant Harris County by and through its HCDAO maintained official and unofficial policies, customs, and practices, knowingly, willfully, and with deliberate indifference to the constitutional rights of the defendants it sought to convict, including Plaintiff.

35.     On or about February 20, 2018 Harris County District Attorney Kim Ogg, was quoted as saying, "My pitch to (County) Commissioners is "pay now or pay later," noting that settlements for civil rights suits or wrongful convictions often end up costing more than the money spent on units dedicated to reviewing faulty cases after they've already happened. She went on to state; "When I was a young prosecutor, I was taught that there are no wrongful executions or exonerations in Texas, and that no one in prison was innocent,".[1]

36.     An Amici Curiae brief filed in the Supreme Court of the United States No. 18-50, in the case of *Linda Carty v. State of Texas*, two former Harris County prosecutors (Linda Geffin and Gene Wu) and former Texas Court of Criminal Appeals Judge Charles F. Baird, argued that prosecutors in Harris County violated *Brady v. Maryland*, by failing to disclose favorable evidence to the defense. Amici stated "Harris County DA's Office has a culture and practice of misapplying Brady standards. That HCDAO county senior prosecutors, like Kelly Seigler, had a misconception regarding her duty under Brady with enormous significance. She was a senior prosecutor in HCDAO and a 21- year veteran. She litigated 20 capital trials,

secured a death sentence in 19 of those. She supervised 70-employees including assistant district attorneys, investigators, fraud examiners, trained new attorneys and was responsible for their continuing legal education (CLE) courses.

37.     Former HCDAO prosecutor Elizabeth Shipley, was sanctioned by the State Bar of Texas for prosecutorial misconduct in the capital murder conviction of Edward McGregor in 2010. Kelly Seigler orchestrated and assisted in the conviction, wherein HCDAO prosecutors withheld Brady evidence of the deals made with jail informants to testify in that case.

38.     John B. Holmes, Jr. was the District Attorney of Harris County, Texas for 21 years. Mr. Holmes served as the District Attorney during the arrest, prosecution, and wrongful conviction of Plaintiff. John B. Holmes, Jr. was the ultimate key policymaker who allowed or encouraged his prosecutors to manipulate witness recollections, fail to keep or maintain adequate records, manufacture evidence, and fail to disclose material exculpatory and impeachment evidence to defense counsel.

39.     The HCDAO has a legacy of callously glamorizing its approach to the death penalty, from former District Attorney Johnny Holmes, Jr.'s "Silver Needle Society," to a sign in the office listing all the Defendants who were executed from Harris County, to a rock-n-roll cover band comprised of Harris County District Attorneys named "Death by Injection."

40.     Harris County District Attorney Chuck Rosenthal, Holmes' successor, boasted in campaign advertisements that he sent 14 individuals to death row "where they belong."

41.     In 2008, Mr. Rosenthal was personally found in contempt of court for deleting more than 2,500 emails after they were subpoenaed in a federal civil rights lawsuit. Consistent with the patterns of practice from Mr. Rosenthal's office during this time period, this example shows the HCDAO had no respect for the legal system and he, himself, was willing to destroy

or otherwise manipulate evidence.

42.     Former District Attorney Pat Lykos sought to change Mr. Holmes' and Mr. Rosenthal's models by establishing a Post-Conviction Review Section in 2009. Ms. Lykos served one term as District Attorney.

43.     Ms. Lykos's successor, Mike Anderson, was elected with a campaign promise to return to the "good old days" of Mr. Holmes and Mr. Rosenthal. In fact, Mr. Anderson invited Mr. Holmes to speak to Harris County District Attorneys in mandatory ethics training after he was elected. Tragically, Mr. Anderson died of cancer after eight months in office, and his widow, Devon Anderson, served until the current District Attorney Kim Ogg was elected in 2016.

44.     The conviction culture and "us *vs.* them" mindset within the Harris County District Attorney's Office was presented during mandatory ethics training for prosecutors on January 31, 2013, after Mr. Anderson was elected. This publicly available training video provided a window into how Assistant District Attorneys are trained.

45.     In Mr. Anderson's opening remarks, he stated that prosecutors were "maligned" by groups like the Innocence Project. Mr. Anderson then stated that the Texas District and County Attorney Association ("TDCAA") had a mission to challenge the Innocence Project and said that the TDCAA "had their backs." Mr. Anderson ended his remarks by stating that "we will kick your butt if it needs to be kicked." *See* https://www.youtube.com/watch?v=FeS-fef4Vm4 (last visited June 7, 2017).

46.     After Mr. Holmes presented to the group, Rob Kepple, the Executive Director of TDCAA and former Assistant District Attorney in Harris County, trained the group for over an hour. In the presentation, Mr. Kepple made troubling analogies to a history of cheating in professional sports and also praised multiple prosecutors for resisting a defendant's request to conduct DNA testing. In fact, Mr. Kepple stated that it was "legal and ethical" to resist DNA

testing.*Id.*

47.     Mr. Kepple also relayed a story that when he was an Assistant District Attorney in Harris County, he bragged that he once made an improper statement in court about a defendant failing to testify in a trial, and he was sanctioned by being ordered to sit in a courtroom for an entire day, making light of unconstitutional conduct.

48.     Mr. Kepple also stated that the Innocence Project was a "paper tiger" and mocked its work.*Id.*

49.     The *Houston Chronicle* stated that "a video of a mandatory ethics training class at the district attorney's office has confirmed those fears [about resorting to the past] about our new district attorney" and that the video "contains far too many troubling moments to be dismissed as an out-of-context fluke." Ethics Training Confirms Fears About Prosecutors Mindsets, *Houston Chronicle*, February 28, 2013. This video underscores the unconstitutional legacy of the Harris County District Attorney's Office and its training failures.

50.     Mr. Kepple and TDCAA do acknowledge, however, that *Brady* issues are serious, and in a report entitled *Setting the Record Straight on Prosecutorial Misconduct*, stated that "the troubling news is that *Brady* violations often play a role in the few confirmed cases of prosecutorial misconduct." TDCAA, *Setting the Record Straight on Prosecutorial Misconduct*, September 12, 2012.

51.     This troubling news is evident in Harris County. A pattern of systemic *Brady* violations show that Defendant Harris County condoned prosecutor's pattern of conduct, resulting in a fundamentally flawed misunderstanding of the duty to disclose evidence. Moreover, Defendant Harris County sanctions these comments, consistent *Brady* violations by accepting them and failing to properly address them.

52.     On, November 23, 2016, in *Ex Parte David Mark Temple*, the Texas Court of Criminal Appeals overturned the defendant's conviction and held that former Harris County Assistant District Attorney Kelly Siegler committed 36 instances of misconduct and had a "misconception" regarding her duty under *Brady* that was "of enormous significance." Ms. Siegler maintained that she was not required to turn over favorable evidence if she did not believe it to be relevant, inconsistent, or credible. The Court noted her misconception "when it came to what constituted *Brady* evidence, her opinion is what mattered." This misconception is a result of the training failure by Harris County regarding a prosecutor's *Brady* obligations.

53.     In *Temple*, the Court cited a troubling Harris County District Attorney's Office policy – that if a defense counsel asked for an examining trial, the prosecution would "close" its file and not give any information over to the defense. Although Temple was again convicted on re-trial it does not negate the deliberate violation of ethical and constitutional violations meted out by the HCDAO. This troubling policy is also indicative of Defendant Harris County's deliberate indifference through its ultimate decision maker, the HCDAO, to the constitutional right of fairness in the administration of justice.

54.     The *Houston Chronicle* reported on the *Temple* case and quoted JoAnne Musick, former president of the Harris County Criminal Lawyers Association and current Chief of Sex Crimes at the Harris County District Attorney's Office. Ms. Musick stated that the *Temple* case and others illustrated troubling problems with Harris County prosecutors' conduct in murder cases and that evidence was withheld by "the same group of prosecutors that were all trained in the same era and came from the same culture." Temple Murder Conviction Tossed, *Houston Chronicle*, November 24, 2016. This further exemplifies Harris County's training failure.

55.     Ms. Musick also wrote an article for the Harris County Criminal Lawyers Association entitled *Harris County – We Have a Brady Problem*, in which she noted the

numerous examples of cases involving *Brady* violations in Harris County. In addition to the *Temple* case noted above, the article notes several other troubling examples. *See* http://www.musicklawoffice.com/wp-content/uploads/2016/05/BRADY-Defender-Fall-2016.pdf (last visited June 7, 2017).

56.     One of the examples is *Ex Parte Linda Carty*, in which Harris County Assistant District Attorneys Connie Spence and Craig Goodhart committed *Brady* violations in that they failed to disclose witness statements that conflicted with or were inconsistent with what was represented to the defense. Prosecutors also failed to disclose a witness statement stating that the witness did not believe Carty to be a danger to society and failed to disclose a deal with another witness that was made.

57.     The trial court in *Carty* held that the Harris County District Attorney's Office operated under a misunderstanding of *Brady* in that similar to Ms. Siegler's misconception that the prosecutors operated on "gut instinct" and "judgment calls" and did not believe that such evidence needed to be disclosed if they did not find the testimony credible. This improper pattern of determining *Brady* on a prosecutor-by-prosecutor basis relying on independent and individual "gut instincts" and "judgment calls" is a further demonstration of Harris County's training failure.

58.     In *Ex Parte Edward McGregor*, Harris County Assistant District Attorney, Elizabeth Shipley Exley, tried the defendant in Fort Bend County as she was simultaneously prosecuting the defendant in a separate murder case in Harris County. In *McGregor*, Ms. Exley did not disclose deals made with jailhouse informants regarding a parole recommendation in pending cases. Ms. Exley stated that, because there was no specific promise for a deal, she "could" notify parole or the pending court about the witnesses' cooperation, but that she was not obligated to disclose the information to the defendant's counsel. After McGregor's trial, one

informant received a favorable letter written on her behalf to the parole board, and two witnesses received favorable plea agreements. The Court of Criminal Appeals remanded the case to the trial court for further findings on the issue on April 26, 2017. Ms. Exley's understanding of *Brady* was erroneous and further demonstrates Harris County's training failure.

59.     In *Ex Parte Kenneth Headley*, former Harris County District Attorney Rob Freyer struck a very favorable deal with an eyewitness – misdemeanor time served on two felony charges in exchange for her testimony at the grand jury and at trial. Mr. Freyer stated that he did not have a duty to disclose the deal, because he would have raised it during direct examination of the witness if he tried the case. However, the case was transferred to another Assistant District Attorney, and the deal was not introduced. The Texas Court of Criminal Appeals reversed and ordered a new trial. Mr. Fryer's misconception about his duty to disclose further demonstrates Harris County's training failure.

60.     In *State v. Glen Kahlden*, the trial court held that the Chief of the District Attorney's Child Abuse Division failed to notify defense attorneys that the child victim in the case initially stated that she had been assaulted by a black man when the Defendant was white. Although the court held that "the state has the duty to disclose, and the district attorneys should have revealed the information," a mistrial was denied because it was discovered during trial. The Harris County District Attorney's Office's fundamentally flawed understanding of the timing and content of a *Brady* disclosure further demonstrates Harris County's training failure.

61.     Therefore, Defendant Harris County performed acts pursuant to agency/department policies, practices, customs and usages, which ratified, tolerated, acquiesced in, maintained, authorized, and permitted the foregoing and following unconstitutional conduct:

    a.     The knowing, deliberate, and intentional wholesale suppression of exculpatory evidence or information of favorable value from Plaintiff and his lawyers

to use in his defense of the most serious criminal charges brought against him.

b.      Enabling the HCDAO to engage in unconstitutional conduct of malicious prosecution of Plaintiff, deliberately undermining Plaintiff's right to a fair trial, right to due process of law, and the right to equal protection of the law.

c.      Permitting the HCDAO and its employees, specifically Assistant District Attorney Baldassono, to purchase or make deals for the perjured testimony of witnesses which played a significant role in the malicious prosecution of Plaintiff and resulted in his wrongful imprisonment.

d.      Tolerating misconduct on behalf of HCDAO and its employees, such as Assistant District Attorney Baldassono, including the concealment of exculpatory evidence, the continued malicious prosecution of Mr. Gandy, and the wrongful imprisonment of Mr.Gandy.

e.      Failing to adequately supervise, monitor, control, and discipline its Assistant District Attorneys, including Defendant Baldassono and other employees, for engaging in a continuous pattern of shocking misconduct, which has led to innocent eople, including Plaintiff, being tried, convicted, and imprisoned for crime which they did not commit.

f.      Condoning and emboldening the HCDAO to engage in misconduct, in the belief that they could violate Plaintiff's rights with the knowledge that such flagrant conduct would not adversely affect opportunities for job promotion and benefits.

g.      Refusing to discipline Assistant District Attorneys, including Assistant District Attorney Steve Baldassono and other employees, with demonstrable

histories of engaging in unethical and unprofessional misconduct; prosecuting cases that resulted in the wrongful imprisonment of innocent individuals, including Plaintiff; and acting in concert with other prosecutors so as to cause the malicious prosecution and wrongful imprisonment of individuals, including Plaintiff.

        h.     Allowing the HCDAO and its Assistant District Attorneys, including Steve Baldassono and other employees, to engage in subornation of perjured testimony in their quest to secure a conviction and engage in malicious prosecution and wrongful imprisonment, as was done in this case.

62.     Plaintiff has been damaged as a proximate result of Defendant Harris County's District Attorney's unconstitutional policies, customs, and practices, as described herein. Plaintiff is entitled to substantial compensatory damages and, because Defendant Harris County acted maliciously, willfully, wantonly, and/or with reckless disregard for his constitutional rights, to substantial punitive damages, plus the costs of this action, attorneys' fees, and such other relief as this Court deems equitable and just.

## **Analogous Case Law**

63.     Plaintiff pleaded sufficient facts and annexed evidence that defendants violated his clearly established constitutional rights to due process as afforded under the 5th and 14th Amendments of the United States Constitution through knowing use of false, misleading, perjured testimony, and knowingly withholding exculpatory evidence favorable to the plaintiff depriving him of a fair trial resulting in wrongful conviction, which deprived him of liberty for 15-years in the Texas Department of Criminal Justice and 15-years on parole until his conviction was vacated. Plaintiff has asserted claims that are ripe for adjudication in this civil action and as such should be allowed to proceed. Plaintiff herein incorporates by reference Exhibits A filed in

the original complaint which includes Trial court findings of fact and conclusions of law, Court of Criminal Appeals opinion and mandate, copy of the certified affidavit from the FBI regarding the false testimony, and copy of the certified trial transcript evidencing the false testimony of co-defendant Clayvell Richard used by the prosecution to convict plaintiff. A complaint should only be dismissed if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In evaluating the complaint, the court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.,* 495 F.3d 191,205 (5th Cir.2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit,* 369 F.3d 464,467 (5th Cir.2004)). A complaint need not contain "detailed factual allegations" so long as the allegations "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

64.     Plaintiff would show as plead, Defendant Harris County acted under color of State law to deprive Plaintiff of his clearly established constitutional rights holding that: A County District Attorney's Office has a "hybrid nature", functioning as an arm of the State of Texas by enforcing State law and as a local entity. See, e.g., *Crane v. Texas*, 766 F. 2d 193 (5th Cir. 1985) (discussing the state and local qualities of a county district attorney's office). "[A] county may only be held liable for acts of a district attorney when he 'functions as a final policymaker for the county." *Brown v. Lyford*, 243 F. Ed 185, 192 (5th Cir. 2001) (quoting Esteves, 106 F. 3d at 678).

65.     The line between acting in a "prosecutorial capacity" and acting as a "final policymaker" is determined by state law and the facts of each case. "Whether an individual defendant is acting on behalf of the state or the local government is determined by state law and

by analysis of the duties alleged to have caused the constitutional violation." *Esteves*, 106 F.3d at 677. A 'municipality may be held liable for the illegal or unconstitutional actions of its final policymakers themselves as they engage in the setting of goals and determination of how those goals will be achieved." *Turner v. Upton County*, 915 F. 2d 133, 136 (5th Cir. 1990) (county liability was appropriate based on the plaintiff's allegations that the Sherriff and the elected district attorney conspired to subject her to a "sham trial"). "When the official representing the ultimate repository of law enforcement power in the county makes a deliberate decision to abuse that power to the detriment of its citizens, county liability under section 1983 must attach, provided that the other prerequisites for finding liability under that section are satisfied." *Id*. At 138 (emphasis in original). Plaintiff's allegations are sufficient to form a plausible basis to state a claim for *Monell* liability against Harris County for the HCDAO policies, practices, and customs.

## COUNT 4

### CAUSE OF ACTION AGAINST UNITED STATES OF AMERICA AND JOHN P. RILEY FOR VIOLATION OF PLAINTIFF'S FIFTH AND/ OR FOURTEENTH AMEND. RIGHTS U.S.C.A.

Violations of the Federal Tort Claims Act

66.    The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2641, et seq, permits private parties to sue the United States for torts committed by employees of the federal government while acting within the scope of their employment. Under the FTCA, the United States is liable for tort claims in the same manner and to the extent as a private individual would be under the circumstances. 28 U.S.C.§2674.

67.    Defendant Riley acted with malice in providing false and misleading testimony that caused the wrongful prosecution and wrongful imprisonment of Plaintiff and was a

proximate cause of Plaintiff's special injuries and damages.

68.     Defendant Riley's conduct in providing false and misleading testimony was intentional or reckless, extreme and outrageous, and proximately cased Plaintiff severe emotional distress.  No alternative cause of action would provide a remedy for the severe emotional distress caused by Defendant's conduct.

69.     Defendant Riley's conduct in providing false and misleading testimony that lead to Plaintiff's malicious prosecution and wrongful imprisonment was deliberately indifferent to Plaintiff's constitutional rights to due process and a fair trial and was a producing cause of Plaintiff's malicious prosecution and wrongful imprisonment.

## Analogous Case Law

70.     *Kristine Bunch v. United States of America*, 16-3775 (7th Cir. 2018), Bunch spent 17 years in an Indiana state prison upon conviction that was based upon the fabricated testimony of an ATF Forensic Chemist who testified falsely at the Plaintiff's trial. See also: *Crooker v, The United States of America*, 10-546C (United States Court of Federal Claims 2014).

## **FTCA Equitable Tolling Case Law**

71.     Plaintiff would show the Court that he could not have raised his Federal Tort Claim under the FTCA without first receiving a ruling by a court of competent jurisdiction that he was wrongfully convicted to raise a claim of malicious prosecution. Further, plaintiff did not receive the affidavit from Dr. Marc LeBeau, the F.B.I. Senior Forensic Scientist, until May 3, 2018.  Until that time, the Plaintiff could not file that document in the trial court in support of Plaintiff's Habeas Corpus petition under the Texas Junk Science Law. The U.S. Supreme

Court held in *United States v. Wong* that the limitations statute in the Federal Tort Claims Act is subject to equitable tolling. *135 S. Ct. 1625 (2015).*

72.     Justice Elena Kagan, writing for the majority, held that the FTCA is subject to equitable tolling. Under *Irwin v. Department of Veterans Affairs, 498 U.S. 89 (1990),* statutes of limitations are "jurisdictional," and thus immune from equitable tolling, only when Congress explicitly says so. This is sometimes referred to as the "clear statement rule." Because the FTCA's limitations statute did not contain such a clear statement, Justice Kagan held that it is merely a claims-processing rule that courts could toll when equity requires. In so holding, Justice Kagan rejected the government's argument that the limitations statute's language — "shall be forever barred" — precluded equitable tolling. That formulation, she reasoned, was "an utterly unremarkable phrase" that was "commonplace in federal limitations statutes for many decades." It "had no talismanic power to render time bars jurisdictional." Similarly, Justice Kagan rejected the government's argument that every limitations statute applying to suits against the United States was jurisdictional because waivers of sovereign immunity must be construed "strictly." She reasoned that the government's argument was irreconcilable with the Court's decision in *Irwin*, and that Congress could make the FTCA limitations statute jurisdictional at any time by adding a clear statement to its text.

73.     In *Limone v. U.S.*, 579 F.3d 79 (2009) Congress dissolved the malicious prosecution bar with respect to federal law enforcement officers in 1974, amending the FTCA to add what has come to be known as the law enforcement proviso. See Pub. L. No. 93-253, §2, 88 Stat. 50, *codified at* 28 U.S.C. §2680(h). There the government posits that the plaintiffs' malicious prosecution claims arose before the enactment of the law enforcement proviso and, therefore, the district court lacked jurisdiction over those claims. The district court brushed

aside this argument, holding that the plaintiffs' malicious prosecution claims did not arise until the scapegoats had received favorable terminations of the criminal charges wrongfully brought against them (an eventuality that did not occur until 2001 at the earliest).See Limone IV,497 F.Supp.2d at 204;Limone III,336 F.Supp.2d at 30-37; see also Heck v. Humphrey,512 U.S. 477, 489, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (indicating that cause of action for malicious prosecution does not accrue until favorable termination of the underlying criminal proceeding has occurred).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court enter judgment against Defendant and grant:

74.    Damages to Plaintiff as compensation for all injuries and losses Plaintiff suffered which were proximately caused by the tortuous acts of Defendant's employees at the HCDAO and or civil rights violations by Defendant's employees at the HCDAO actions through its customs, practices or policies, in the amount of $1 Million for each year incarcerated and $15 Million for 15-years on supervised parole; Plaintiff seeks $15 Million for pain, suffering and emotional distress and for the deprivation of his liberty through imprisonment, and loss of earnings and earning capacity proximately caused by the knowing, willful and deliberate violation of his constitutionally protected rights.

75.   Plaintiff also seeks punitive damages against defendant Harris County.

76.   Plaintiff seeks as compensation for all injuries and losses Plaintiff suffered which were proximately caused by the tortuous acts of Defendant Riley, in the amount of $1 Million for each year served in prison and on supervised parole; Plaintiff seeks $15 Million for the deprivation of his liberty through wrongful imprisonment, emotional  distress, pain and

suffering, and loss of earnings and earnings capacity.

77.    Costs associated with this action, including reasonable attorneys' fees under 42 U.S.C.§1988;

78.    Prejudgment and post-judgment interest as allowed by law; and

79.    Any further relief that this Court deems just and proper, and any other appropriate relief available at law and equity.

Respectfully submitted,

**COATS ROSE, P.C.**

By:*/s/ Dwight E. Jefferson*
          Dwight E. Jefferson
          State Bar No. 10605600
          9 Greenway Plaza, Suite 1000
          Houston, Texas 77046
          (713) 651-0111 - Telephone
          (713) 651-0220 - Facsimile
          Email: djefferson@coatsrose.com


**GREALISH MCZEAL, P.C.**

By: */s/ Marcellous S. McZeal*
          Marcellous S. McZeal
          S.D. Tex. Admission No.: 21271
          E-Mail mczeal@grealishmczeal.com
          700 Louisiana St., 48th Floor
          Houston, Texas 77002
          (713) 255-3234 – Telephone
          (713) 783-2502 – Facsimile

**ATTORNEYS FOR PLAINTIFF**
**ROBERT GANDY**


**CERTIFICATE OF SERVICE**

I hereby certify the foregoing instrument was forwarded to all counsel of record using the Court's ECF system, which will cause a true and correct copy be served on this 14th day of April 2020.

*/s/ Marcellous S.McZeal*

Marcellous S. McZeal