**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ROBERT GANDY** | § | |
| *Plaintiff,* | § | |
| | § | **CIVIL ACTION NO. 4:19-cv-03487** |
| **V.** | § | |
| | § | |
| **HARRIS COUNTY, et al.,** | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

**DEFENDANT HARRIS COUNTY'S MOTION FOR**
**JUDGMENT AS A MATTER OF LAW**

Comes now Defendant Harris County and moves this Court for Judgment as a Matter of

Law in favor of Defendant Harris County. Defendant would respectfully show the Court as

follows:

**PROCEDURAL BACKGROUND**

1.      The matter above was called to Order and trial commenced on Monday, June 21,

2021 at 1:30 p.m.

2.      Plaintiff Robert Gandy subsequently began his case-in-chief and presentation of

evidence, including calling Stephen Baldassano, Harris County District Attorney Kim Ogg, and

himself as witnesses.

3.      Plaintiff Gandy rested his case before the jury on Wednesday, June 23, 2021.

4.      Defendant Harris County now moves this Court for Judgment as a Matter of Law.

**MOTION FOR JUDGMENT AS A MATTER OF LAW**

This is a 42 U.S.C. §1983 civil rights lawsuit brought by Plaintiff Robert Gandy ("Plaintiff"

or "Gandy") alleging that the Defendant violated his 5th and 14th Amendment rights by depriving

him of a fair trial in 1990, resulting in his conviction and 15-year imprisonment for aggravated robbery.  Gandy's conviction was overturned in 2019 by the Texas Court of Criminal Appeals on the basis of newly discovered scientific evidence.

Plaintiff alleges the trial prosecutor, Stephen Baldassano, committed three instances of misconduct in the course of his trial:  that he withheld a statement by co-defendant Richard, withheld a plea agreement by co-defendant Richard, and used false scientific testimony to secure Gandy's conviction.  Plaintiff further alleges that Harris County had a pattern and practice of committing *Brady* violations such as the ones alleged against Baldassano, and that District Attorney John Holmes (as the final policy maker for the Harris County District Attorney's Office in 1990) was deliberately indifferent to such unlawful pattern and practice.

## LEGAL STANDARD AT ISSUE

To impose §1983 liability on Harris County, Plaintiff must prove an underlying constitutional violation plus three additional elements: (1) a policymaker; (2) an official policy; and (3) that the policy was the "moving force" behind the constitutional violation.  *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018); see also *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978).  Liability must rest on an official policy, meaning the policy of the government, and not the policy of an individual official. *Bennett v. City of Slidell,* 728 F.2d 762, 769 (5th Cir. 1984). "[A]ctions of officers or employees of the [government] do not render the [government] liable under §1983 unless they execute official policy."  *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) "Consequently, the unconstitutional conduct must be directly attributable to the [government] through some sort of official action or imprimatur, isolated unconstitutional actions by employees [of the government] will almost never trigger liability." *Id.*

2

For Harris County to be liable based on an official county policy, Plaintiff "must show, among other things, either (1) that the policy itself violated federal law or authorized or directed the deprivation of federal rights or (2) that the policy was adopted or maintained by [government] policymakers 'with deliberate indifference as to its known or obvious consequents…'" *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004). "For an official to act with deliberate indifference, the official must <u>both</u> be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 381 (5th Cir. 2005) (emphasis added). Deliberate indifference is more than mere negligence; it is an intentional choice consciously and maliciously made by the municipality's policymakers. *Conner v. Travis County*, 209 F.3d 794, 796-797 (5th Cir. 2000). "A showing of simple or even heightened negligence will not suffice." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997). Rather, it "must amount to an intentional choice, not merely an unintentionally negligent oversight." *James v. Harris Cty.*, 577 F.3d 612, 617-618 (5th Cir. 2009).

If a plaintiff adduces evidence of an official policy promulgated with deliberate indifference, then the plaintiff must prove that the government's official policy was the "moving force" and actual cause of the deprivation of constitutional rights. *See Piotrowski*, 237 F.3d at 578. "The allegations of [an official county] policy and its relationship to the underlying constitutional violation cannot be conclusory but must contain specific facts." *Prince v. Curry*, 2010 WL 1062611 at *3 (N.D. Tex. 2010); *Ratliff v. Aransas Cty.*, 948 F.3d 281, 285 (5th Cir., 2020) (must do more than describe the incident that gave rise to an injury). A "but for" connection to the deprivation of rights is not sufficient to satisfy the causation element. *See, e.g. Valle v. City of*

3

*Houston*, 613 F.3d 536, 546 (5th Cir. 2010) ("…causation must be more than a mere 'but for' coupling between cause and effect).

Thus, to recover against Harris County under Section 1983, Plaintiff must first prove a direct causal link between the governmental policy and/or custom at issue and the alleged constitutional deprivation; he then must establish that Harris County consciously enacted a policy reflecting 'deliberate indifference' to the constitutional rights of its citizens. *See Snyder v. Trepagnier*, 142 F.3d 791, 795-96 (5th Circ. 1998), cert. dism'd, 526 U.S. 1083 (1993)(*citing City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 1205  (1989);  *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 649 n. 4 (5th Cir. 1996). Deliberate indifference, the degree of culpability required to hold Harris County liable, is a stringent standard of fault, requiring proof that a governmental actor disregarded a known or obvious consequence of his action." *See Brown*, 117 S. Ct. at 1391; *Piotrowski v. City of Houston*, 237 F. 3d 567, 578 (5th Cir. 2001) (also describing the standard for facially innocuous policies as stringent).

## NO EVIDENCE ESTABLISHED AT TRIAL

### A. *No Brady Violations in the Aggravated Robbery Trial.*

Plaintiff originally alleged that the prosecutor in this case intentionally withheld an exculpatory witness statement, as well as allowing his co-defendant Clayvell Richard ("Richard") to testify falsely on the existence of his plea agreement. Plaintiff believes that *Brady* material was withheld at the aggravated robbery trial, despite overwhelming evidence to the contrary. There was no evidence presented that any *Brady* violations occurred in the 1990 trial.

Plaintiff alleged in his opening statement that the prosecutor suppressed a witness statement in which Richard recanted his prior testimony on Gandy's knowledge and involvement

with the crime. However, Plaintiff presented no testimony whatsoever on this allegedly withheld statement from either the prosecutor or his own testimony.

Plaintiff also alleged that the prosecutor suppressed evidence of Richard's plea agreement in exchange for his testimony. While Baldassano conceded that Richard testified falsely when he denied having a plea agreement, he further testified that he continuously questioned Richard in an attempt to elicit the truthful testimony on the plea deal, and that the plea information was fully disclosed to the jury under cross examination. In fact, Gandy's criminal defense counsel began his cross examination of Richard by asking him if he had a deal to testify, to which Richard immediately fully admitted in front of the jury. Baldassano further testified that there were a number of safeguards in place to ensure Richard's testimony on his plea deal was properly disclosed before both the judge and the jury, and that it was in fact disclosed. As the plea deal with Richard was fully before the jury, Plaintiff cannot prove a *Brady* violation, much less a constitutional injury from the brief time that the jury was unaware of Richard's plea.

Plaintiff offered no testimony or evidence to contradict Baldassano's assertion that the method used to cure the matter was improper at the time of prosecution in 1990.  In fact, the law at the time of Gandy's trial stated "[i]f a defendant successfully elicits all aspects of the plea agreement during the witnesses' cross-examination, however, any error in nondisclosure is harmless and not likely to affect the judgment of the jury." *U.S. v. Leslie* 759 F2.d 366, 377 (5th Cir. 1985) *citing U.S. v. Decker* 543 F.2d 1102 (5th Cir. 1976)("[I]n view of the fact that Oddo's agreement was fully disclosed to the jury and the subject of extensive cross examination, any error would in our opinion be harmless.").

There is no evidence of any *Brady* violations in the aggravated robbery trial. To date, there has never been a determination or any adjudication by a jury or Court that *Brady* violations

occurred during the trial. Additionally, even assuming *arguendo* that Plaintiff has established that Baldassano's conduct constituted a *Brady* violation in Gandy's 1990 criminal trial, no evidence was presented of *any Brady* violations that occurred outside of this case. Plaintiff has provided no evidence of a pattern and practice of *Brady* violations to which the Holmes administration was deliberately indifferent.

**B. *No Evidence of Pattern and Practice of Junk Science by Harris County***

Additionally, Plaintiff has provided no evidence of a pattern and practice of Harris County under policymaker John Holmes to use "junk science" testimony to secure convictions. The evidence presented at trial indicated that the FBI, who provided the expertise on CBLA, did not even become aware of a problem with it until they entered into an agreement with the National Research Council ("NRC") of the National Academy of Science to individually evaluate the scientific basis of CBLA in 2002. The NRC's report found that the science behind CBLA testimony was sound, but noted that problems arose in the interpretation of this science in testimony. In his affidavit, Dr. LeBeau noted that "the FBI still believes that there was a scientific foundation for the CBLA examination[,]" but "the question as to the significance that juries assigned to this evidence seemed to outweigh the value of the examination."

The only testimony presented at trial on the use of "junk science" by the District Attorney's Office was that Baldassano had never used Comparative Bullet Lead Analysis ("CBLA") testimony before this case, and never used it again after this case. Plaintiff has not provided evidence that CBLA was used by Harris County in any other prosecution or should have been aware that CBLA testimony would be discontinued by the FBI in 2005. Indeed, at the time of Gandy's prosecution, CBLA was uncontroversial, as evidenced by Riley's testimony at trial that he had testified previously over 400 times and Gandy's counsel's declination to attempt to exclude

Riley's testimony. Further, the only other "junk science" case presented at trial that was prosecuted under the contemporaneous administration—*Sonnier*—was reversed because of DNA evidence, not CBLA testimony. Plaintiff has provided no evidence that Harris County had a pattern and practice of eliciting junk science testimony to secure convictions.

## C. *Deliberate Indifference Was Not Proven*

Plaintiff has failed to provide a single witness to establish the deliberate indifference of the Holmes administration to either prolific *Brady* violations *or* the use of "junk science" testimony to secure convictions. There was no evidence presented that John Holmes was deliberately indifferent with respect to the constitutional rights of criminal defendants. The evidence showed that he demanded and expected each of his prosecutors to follow the requirements of *Brady.* Not a single witness testified to the contrary. Not a single witness testified that it was Mr. Holmes' philosophy or policy to suppress exculpatory information, or to "win at all costs," including violating *Brady* or the use of "junk science" testimony. The only witness who opined on this question—District Attorney Kim Ogg—testified to the opposite.

In fact, Ms. Ogg testified that it was the policy of the Holmes administration to disclose exculpatory evidence in line with *Brady*, and that any failure to adhere to this policy would result in both termination and prosecution. If Plaintiff has established that any such violation occurred during the criminal prosecution of Gandy, the testimony established it would have been *contrary* to the policies of the Holmes administration, not part of a custom, pattern, or practice of the office.

Furthermore, there was no evidence presented at trial that in 1990 there was any evidence which placed Mr. Holmes on notice that his prosecutors were not complying with the requirements of *Brady.* To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations. Proof of more than a single instance of the violation is normally required

before such violation constitutes deliberate indifference. *Rios v. City of Del Rio, Tex.,* 444 F.3d 417, 427 (5th Cir. 2006); *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 381-383 (5th Cir.2005); *Johnson v. Deep East Texas Regional Narcotics,* 379 F.3d 293, 309 (5th Cir.2004); *Burge v. St. Tammany Parish,* 336 F.3d 363, 370 (5th Cir.2003); *Cousin v. Small,* 325 F.3d 627, 637 (5th Cir. 2003); *Thompson v. Upshur County, TX,* 245 F.3d 447, 459 (5th Cir.2001); *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir.2005).

## CONCLUSION

Defendant Harris County is entitled to judgment as a matter of law, because Plaintiff presented no evidence that the requisite policy maker was deliberately indifferent to habitual unconstitutional conduct by his subordinates, that there existed a pattern and practice of such conduct, or even that the prosecutor in this case committed a single act of misconduct.

Defendant Harris County respectfully requests that this Court grant its Motion for Judgment as a Matter of Law, and for any other relief as deemed necessary.

Respectfully submitted,

OF COUNSEL:           By: */s/ Miryea Ayala*
**CHRISTIAN D. MENEFEE**    **MIRYEA AYALA**
Texas Bar No. 24088049      Assistant County Attorney
Harris County Attorney        Texas State Bar No. 24105451
                        Federal Bar No. 3350708
                        1019 Congress, 15th Floor
                        Houston, Texas 77002
                        Telephone: (713) 274-5155
                        miryea.ayala@cao.hctx.net

                        */s/ Stan Clark*
                        **STAN CLARK**
                        Assistant County Attorney
                        Texas State Bar No. 24062666
                        Federal Bar No. 3121992
                        1019 Congress, 15th Floor
                        Houston, Texas 77002

Telephone: (713) 274-5117
stan.clark@cao.hctx.net

**ATTORNEYS FOR DEFENDANT
HARRIS COUNTY**

**CERTIFICATE OF SERVICE**

   I hereby certify that on June 23, 2021, a true and correct copy of the foregoing document was served pursuant to Federal Rules of Civil Procedure to:

**Marcellous S. McZeal
Dwight E. Jefferson**
700 Louisiana Street, 48th Floor
Houston, Texas 77002
mmczeal@grealishmczeal.com

**Keith Edward Wyatt**
Assistant U.S. Attorney
United States Attorney's Office
1000 Louisiana Street, Suite 2300
Houston, Texas 77002
Keith.Wyatt@usdoj.gov

*/s/ Miryea Ayala*
**MIRYEA AYALA**
Assistant County Attorney